UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JAMES MENDYK
JR.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY
ADMINISTRATION,

                Defendant.

_____/

Case No. 3:18-CV-11730
District Judge Robert H. Cleland
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 15), DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 17) and REMAND THIS MATTER TO THE COMMISSIONER

**I.      RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary

judgment (DE 15), **DENY** Defendant's motion for summary judgment (DE 17),

and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of

§ 405(g) for further consideration consistent with the report below.

**II.     REPORT**

Plaintiff, Michael James Mendyk Jr., brings this action under 42 U.S.C §

405(g) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for Disability Insurance (DI) benefits.

This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 15), the Commissioner's cross-motion for summary judgment (DE 17), Plaintiff's reply (DE 19) and the administrative record (DE 11).

### A.   Background and Administrative History

Plaintiff alleges his disability began on October 12, 2013, at the age of 37. (R. at 184.)  In his disability report, he lists spinal cord/neck surgery, R cubital tunnel surgery, L cubital tunnel surgery, lower back vertebra compression, debilitating pain in lower extremities, pain in forearms, depression, severe anxiety, bipolar disorder, and mood stabilization disorder as limiting his ability to work. (R. at 187.)  His application was denied on September 4, 2015.  (R. at 80-87.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 88-89.)  On June 22, 2017, ALJ John Loughlin held a hearing, at which Plaintiff and a vocational expert (VE), Susan J. Rowe, testified.  (R. at 22-59.)  On September 12, 2017, ALJ Loughlin issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 12-31.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at 148-155.)  However, on April 4, 2018, the Appeals Council denied Plaintiff's

request for review.  (R. at 1-6.)  Thus, ALJ Loughlin's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on June 1, 2018.

### B.      Plaintiff's Medical History

The administrative record contains approximately 860 pages of medical records, which were available to the ALJ at the time of his September 12, 2017 decision.  (R. at 275-1,138 [Exhibits 1F-18F].)  These materials will be discussed in detail, as necessary, below.

### C.      The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 30, 2014, the alleged onset date.  (R. at 17.)[1]  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: cervical spondylosis/anterior fusion surgery, cervical radiculopathy, lumbar degenerative disc disease, spondylosis – post laminectomy, thoracic spine degenerative disc disease, bilateral cubital tunnel with surgery, bilateral carpal

---

[1] The ALJ's decision states that Plaintiff filed his application for DI benefits on November 12, 2014 (R. at 15), but Plaintiff's application in the record shows that it was filed on January 5, 2015 (R. at 156).  Further, the ALJ's decision states an alleged onset date of August 30, 2014 (R. at 15, 17), but Plaintiff's application and the disability report both state an alleged onset date of October 12, 2013 (R. at 156, 184).  On remand, these discrepancies should be cleared up.

tunnel with surgery, major depression, anxiety, and alcohol and substance abuse

disorder.  (*Id*. at 17-18.)  At **Step 3**, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments.  (*Id*. at 18-20.)  **Between Steps 3 and 4**

of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity

("RFC")[2] and determined that Plaintiff had the RFC:

> . . . to perform light work . . . except he can frequently push, pull handle,
> or finger with the upper extremities. [*i.e., exertional and manipulative
> limitations*] He can frequently balance, stoop, kneel, crouch, and crawl.
> [*i.e., postural limitations*] He can frequently climb stairs and ramps. He
> can never climb ladders, ropes, and scaffolds. [*i.e., exertional
> limitations*] He can have occasional exposure to dust, noxious odors,
> fumes, poor ventilation, extreme cold, extreme heat, humidity, and
> wetness. [*i.e., environmental limitations*] He can understand and
> remember simple instructions, make simple work related decisions,
> carry-out simple instructions and can occasionally deal with
> supervisors and coworkers, but not the public. [*i.e., mental limitations*]
> He can alternate between walking and or standing and sitting every
> thirty minutes while remaining on task. [*i.e., exertional limitations*]

(*Id*. at 20-24.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work.  (*Id*. at 24.)  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ determined that there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform,

---

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

such as mail clerk, office helper, and machine tender. (*Id*. at 25.) The ALJ
therefore concluded that Plaintiff had not been under a disability, as defined in the
Social Security Act, since August 30, 2014. (*Id*. at 25.)

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final
administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case
under the Social Security Act, the Court "must affirm the Commissioner's decision
if it 'is supported by substantial evidence and was made pursuant to proper legal
standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)
(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see
also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as
to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under
this standard, "substantial evidence is defined as 'more than a scintilla of evidence
but less than a preponderance; it is such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241
(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.
1994)). In deciding whether substantial evidence supports the ALJ's decision, the
court does "not try the case *de novo*, resolve conflicts in evidence or decide
questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff alleges four claims of error: (1) the ALJ failed to provide a "path of reasoning supported by the medical evidence of record to support his conclusions and findings[;]" (2) the ALJ failed to properly weigh the opinion of the treating physician, Shirley Raveendran, M.D.; (3) the ALJ failed to consider and evaluate

the medical evidence regarding Plaintiff's inability to sit 4 of 8 hours; and (4) the ALJ inaccurately assessed the objective medical testing, findings on physical examination and nature of Plaintiff's treatment.  (DE 15 at 5, 15-28.)   The Commissioner responds that: (1) the ALJ was not required to provide pinpoint citations to the record in his decision; (2) the ALJ properly discounted Dr. Raveendran's treating source opinion; (3) the ALJ's RFC findings, specifically regarding Plaintiff's ability to sit, are supported by substantial evidence; and (4) the ALJ appropriately considered the record as a whole and resolved any conflict in deciding that Plaintiff was not disabled, and that substantial evidence supports the ALJ's  decision.  (DE 17 at 6-22.)

Because I find that the ALJ erred in his evaluation of Plaintiff's treating physician's opinion, and that this matter should be remanded on that basis, I will not address the merits of Plaintiff's remaining arguments.

### 1.     Dr. Shirley Raveendran's treatment and findings

Plaintiff treated with Dr. Raveendran from September 2015 through April 2017 for low back pain syndrome, lumbar/lumbosacral spondylosis, sacrolitis, persistent cervical pain, cervicalgia, cervical/cervicothoracic spondylosis with radiculopathy and left shoulder pain.  (R. at 1006-1129 [Exhibits 16F-17F].)  On examination in September 2015, Dr. Raveendran noted lumbar muscle spasms, poor extension and flexion of Plaintiff's back, that his gait was "bent forward

slightly when standing," clubbing of the digits with swelling, wasting of the distal thenar eminence, hypothenar eminence and snuff box, decreased strength of Plaintiff's lower extremities, but normal range of motion, and decreased flexion, extension and right and left lateral bending of Plaintiff's head and neck.  (R. at 1098.)[3]  Dr. Raveendran continued to treat Plaintiff through April 2017, primarily with various pain medications and referrals to physical therapy.  (R. at 1006-1129.)

Dr. Raveendran also referred Plaintiff to Dr. Rama Rao, M.D., a pain management specialist, for a series of transforaminal and cervical epidural steroid injections and cervical facet medical branch blocks from April through September 2016.  (R. at 976-79, 984, 987, 1006-1129.)  Dr. Rao assessed Plaintiff with persistent, severe lower back pain, severe lumbar/lumbosacral radiculopathy, lumbar spondylosis with radiculopathy, lumbar disk disorder with radiculopathy, sacroiliitis, status post laminectomy syndrome, status post cervical neck fusion, cervicalgia, thoracic pain, thoracic spondylosis and failed conservative therapy (physical therapy and medications).  (R. at 976, 982, 984.)  In October 2016, Dr. Raveendran noted that EMG testing revealed chronic C7-C8 atrophy with

---

[3] A *snuff box* in this context (unlike in Victorian Era literature) is "A hollow seen on the radial aspect of the wrist when the thumb is extended fully; it is bounded by the prominences of the tendon of the extensor pollicis longus posteriorly and of the tendons of the extensor pollicis brevis and abductor pollicis longus anteriorly. The radial artery crosses the floor that is formed by the scaphoid and the trapezium bones." *Stedmans Medical Dictionary* 34720 (2014).

reinnervation pattern, no ongoing denervation, and loss of motor function severe in both hands.  (R. at 1027.)

In addition, the record evidence reveals that Plaintiff had cervical fusion and corpectomy surgery with plating from C5 to C7 and cervical spine artificial disc placement at C4-5 in September 2014, based on an August 2014 cervical MRI which revealed severe canal stenosis and cord compression from levels C5 through C7.  (R. at 460, 476-77.)  Plaintiff also had right ulnar nerve surgery in November 2014 and left ulnar nerve surgery in January 2015.  (R. at 463, 883, 847.)

On October 5, 2016, Dr. Raveendran completed a Disability Parking Application for Plaintiff in which she opined that Plaintiff has an arthritic, neurological, or orthopedic condition that severely limits his ability to walk, due to degenerative disc disease in the thoracic, cervical and lumbar areas of his spine, and that this condition is permanent.  (R. at 988.)

### 2.    The ALJ gave Dr. Raveendran's opinion "little weight"

The ALJ considered Dr. Raveendran's opinion concurrently with the opinion of Nathalie Menendes, Psy. D., and gave both opinions "little weight," stating:

> Nathalie Menendes, Psy. D., opined that the claimant could understand and remember simple and one step instructions and work procedures, but would have difficulty consistently remembering complex and multi-step instructions.  Dr. Menendes further opined that the claimant would not be able to persist through a typical 8-hour day (12F). In October 2016, Shirley Raveendran, M.D., signed a certification that allowed the claimant to receive a disabled parking placard (14F).  I give these opinions little weight as they are inconsistent with the objective

9

medical record and the claimant's activities of daily living (3E; 4F; 5F; 9F; 10F; 11F; 13F; 15F; Testimony).

(R. at 23.)

Plaintiff argues that the ALJ's perfunctory statement regarding Dr. Raveendran's opinion fails to satisfy the "good reasons" requirement for according less than controlling weight to a treating physician's opinion.  (DE 15 at 18-21.) The Commissioner responds that the ALJ properly discounted Dr. Raveendran's treating source opinion.  (DE 17 at 8-13.)  I agree with Plaintiff that the ALJ's treatment of Dr. Raveendran's opinion was inadequate, and find that this matter should be remanded for consideration of Dr. Raveendran's opinion consistent with the requirements of the treating physician rule, as explained below.

### 3.    Treating source opinion evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 404.1527(b).  The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).  The cited regulations remain in effect for claims filed before March 27, 2017.  *See* 20 C.F.R. §§ 404.1520c, 404.1527.  For claims filed before March 27, 2017, such as this one, "the Commissioner's regulations establish a hierarchy of acceptable medical

source opinions[.]" *Martin v. Colvin*, 207 F.Supp.3d 782, 788 (S.D. Ohio 2016) (quoting *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013)).  "In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers." *Id.*

Under the regulations, a treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and … not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013).  The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408. To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.[4]  *Wilson v. Comm'r*

---

[4] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special

*of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not

give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*; *see also* 20 C.F.R. § 404.1527(c).

However, while an ALJ must "always give good reasons in [the ALJ's]

notice of determination or decision for the weight [the ALJ] give[s] your treating

source's opinion,"  20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to

make clear to any subsequent reviewers the weight the adjudicator gave to the

treating source's medical opinion and the reasons for that weight," *Friend v.*

*Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal

---

significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past relevant work;
> 4. How the vocational factors of age, education, and work experience apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id.*

quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (citing § 404.1527(d)(2)). Nevertheless, the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is applied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45.

The failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006)

(quoting *Wilson*, 378 F.3d at 547).  *See also, Betty v. Comm'r of Soc. Sec.,* No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

> **4.    The ALJ failed to acknowledge that Dr. Raveendran was Plaintiff's treating physician and failed to provide "good reasons" for not giving Dr. Raveendran's opinion controlling weight**

The Commissioner agrees that Dr. Raveendran is Plaintiff's treating physician and concedes that Dr. Raveendran's statement on the Disability Parking Placard Application constitutes her medical opinion.  (DE 17 at 9, 11-12.)  She then contends that the ALJ's single-sentence statement that Dr. Raveendran's opinion is "inconsistent with the objective medical record and the claimant's activities of daily living" is a "sufficient explanation to discount that opinion," contending that "[a] review of the record as a whole demonstrates that the ALJ's finding is supported by substantial evidence."  (DE 17 at 9-10.)  However, I find that the ALJ's single, perfunctory statement is exactly the type of vague language that the Sixth Circuit has found insufficient to permit meaning review.  *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (explaining that the "good reasons" for giving a treating physician's opinion less than controlling weight must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that weight"); *see also Rines v. Comm'r of Soc. Sec.*, No. 16-cv-13887, 2017 WL 4786144, at *4 (E.D. Mich. Oct. 24, 2017) ("[T]he ALJ's statement that Dr. Price's opinions were inconsistent with the other medical evidence in the record is not a sufficient substitute for a careful analysis of Dr. Price's opinions and an explanation as to why, under the applicable factors, the opinions are entitled to zero weight.") (emphases omitted); *Gregory v. Comm'r of Soc. Sec.*, No. 16-cv-12572, 2017 WL 4081850, at *3-4 (E.D. Mich. Sept. 14, 2017) (finding that the ALJ's perfunctory rejection of the treating doctor's opinion as "vague" and that it "did not specify the parameters of claimant's functionality" was "insufficient and inadequate"). Rather, an ALJ "must articulate, as some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). That simply cannot be done here.

While the ALJ broadly cites to eight exhibits, comprising approximately <u>475 pages of the record</u>, as well as broadly citing to "Testimony," in support of his finding that Dr. Raveendran's opinion is entitled to "little weight," it is unclear which of those exhibits or testimony are purportedly inconsistent with Dr. Raveendran's opinion as opposed to Dr. Menendes's opinion (which addresses Plaintiff's *mental* impairments, as opposed to Dr. Raveendran's opinion, which

addresses Plaintiff's *physical* impairments), and more importantly, *how* or *why*
those records are inconsistent with Dr. Raveendran's opinion.  In fact, the ALJ
wholly fails to acknowledge that Dr. Raveendran is Plaintiff's treating physician,
and fails to even refer to Dr. Raveendran's treatment records of Plaintiff at all in
his entire opinion, much less explain how or why those treatment records are
inconsistent with the doctor's opinion.  The ALJ therefore has offered no
meaningful discussion or analysis of Dr. Raveendran's opinion, and the Court is
unable to provide a "meaningful review" of the ALJ's decision to discount that
opinion.  *See Gayheart*, 710 F.3d at 376; *see also Friend*, 375 F. App'x at 551
("[I]t is not enough to dismiss a treating physician's opinion as 'incompatible' with
other evidence of record; there must be some effort to identify the specific
discrepancies and to explain why it is the treating physician's conclusion that gets
the short end of the stick."); *see also Gregory*, 2017 WL 4081850, at *4 (rejecting
ALJ's "perfunctory rejection" of treating physician's opinion in part because "the
ALJ's one sentence of actual analysis included no citations to, or analysis of, Dr.
Ibrahim's treatment notes").  Nor does it "let the claimant[] understand the
disposition of [his] case." *Snell*, 177 F.3d at 134; *Wilson*, 378 F.3d at 544-45.

    In fact, it appears that the ALJ considered *none* of the factors that an ALJ
"must" evaluate when reviewing the opinion of a treating physician, such as the
"length of the treatment relationship and the frequency of examination, the nature

and extent of the treatment relationship, supportability of the opinion… and any specialization of the treating physician[,]" perhaps with the ostensible, broad-brush exception of the "consistency of the opinion with the record as a whole" factor. *See Blakely*, 581 F.3d at 406.  Although the Commissioner may be correct in stating that pinpoint citation to the record is not necessary (DE 17 at 7-8), compliance with the regulation governing the consideration of the treating physician's opinion is, and neither the claimant nor the Court can be expected to search through the record and guess about what appeared to be "inconsistent" in the ALJ's mind's eye.

While the Commissioner attempts to rehabilitate the ALJ's lack of reasoning on this point by citing to other record evidence that *could* support the ALJ's finding (*see* DE 17 at 10-13), that is precisely the type of analysis the ALJ should have undertaken in the first place, but did not.  Fundamentally, it is the responsibility of the ALJ, not the Court nor the Commissioner, to evaluate the relevant evidence in the first instance; the fact that the Commissioner now offers *post hoc* justifications for the ALJ's conclusion is simply insufficient. *See, e.g.*, *Schroeder v. Comm'r of Soc. Sec.*, No. 11-14778, 2013 WL 1316748, at *13 (E.D. Mich. Mar. 1, 2013) (Commissioner's "*post hoc* rationalization" is not an acceptable substitute for the ALJ's failure to adequately evaluate the medical evidence); *Garza v. Comm'r of Soc. Sec.*, No. 15-11507, 2016 WL 703038, at *6,

n. 5 (E.D. Mich. Jan. 22, 2016) ("[I]t is the function of the ALJ—not this Court—to evaluate and weigh the relevant medical evidence."); *Christephore v. Comm'r Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at \*6 (E.D. Mich. June 18, 2012) (Roberts, J.) ("[I]t is not the Court's job to conduct a de novo review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence. Moreover, it is the ALJ's rationale that is under review, not defense counsel's.").  The Sixth Circuit has made clear that courts "cannot excuse a denial of a mandatory procedural protection," such as the treating physician rule, "simply because as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion, and thus, a different outcome on remand is unlikely."  *Wilson*, 378 F.3d at 546.[5]

Accordingly, this matter must be remanded for consideration of Dr. Raveendran's opinion consistent with the requirements of the treating physician rule.  The Court expresses no view of the merits of Dr. Raveendran's opinion, but instead simply requires the ALJ to thoroughly and carefully explain his treatment of that opinion.  On remand, the ALJ may again afford Dr. Raveendran's opinion

---

[5] The Commissioner has not argued that the ALJ's failure to properly analyze Dr. Raveendran's opinion is harmless error, and thus any such argument is waived. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal.").

"little weight," but if he does so he must explain in substantially more detail the "good reasons" for doing so, particularly in light of Dr. Raveendran's records, as cited extensively above.

### 3.   Remand under Sentence Four

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir.1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue,* 10–207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher,* 17 F.3d at 174); *see also White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 790 (6th Cir. 2009) ("If a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if

all factual issues have been resolved and the record adequately establishes a

plaintiff's entitlement to benefits." (internal quotations omitted)).

Here, the ALJ's evaluation of Dr. Raveendran's opinion does not meet the

procedural requirements of 20 C.F.R. § 404.1527 for the reasons set forth above.

Accordingly, I recommend that the Court remand this case under Sentence Four.

*See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (The Sixth Circuit "has made

clear that [it] do[es] not hesitate to remand when the Commissioner has not

provided good reasons for the weight given to a treating physician's opinion and

[the Sixth Circuit] will continue remanding when [it] encounters opinions from

ALJs that do not comprehensively set forth the reasons for the weight assigned to a

treating physician's opinion.").  On remand, the ALJ shall provide additional

explanation and analysis with respect to his treatment of Dr. Raveendran's opinion.

**F.    Conclusion**

Due to the errors outlined above, Plaintiff is entitled to an order remanding

this case to the Social Security Administration pursuant to Sentence Four of 42

U.S.C. § 405(g).  Accordingly, it is **RECOMMENDED** that the Court **GRANT**

Plaintiff's motion for summary judgment (DE 15), **DENY** Defendant's motion for

summary judgment (DE 17), **REVERSE** the Commissioner's decision, and

**REMAND** this case to the Commissioner and the ALJ under Sentence four of §

405(g) for further consideration consistent with this Report and Recommendation.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated:  August 7, 2019              s/*Anthony P. Patti*
                                    Anthony P. Patti
                                    UNITED STATES MAGISTRATE JUDGE